## UNEXCELLED FIRE-WKS. CO. v. GEO. POLITES.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF LAWRENCE COUNTY.

Argued October 16, 1889—Decided January 6, 1890.
[To be reported.]

1. When an accepted order for goods, to be shipped to the buyer, amounts simply to a bargain and sale of goods not specific, and before they are separated from the bulk and set apart to the vendee, he notifies the vendor not to ship them, such notice is a revocation of the carrier's agency to receive the goods, and a subsequent delivery of them to the carrier will not charge the vendee with their price, his only liability being for damages for refusing to accept them.

2. The present tendency of the American cases *is* to the doctrine that where the vendor stands in the attitude of complete performance on his part, he is entitled to the contract price as his measure of damages; but, on an executory contract for the sale of goods not specific, the measure of damages for a refusal to receive them, is the difference between the contract price and the market value on the day appointed for delivery.

3. A statement of claim, averring that certain goods, ordered by the defendant, were shipped by the plaintiff according to the order, but the defendant refused to receive them from the carrier; that they were then of no use to the plaintiff, having been manufactured for the defendant and unsalable to other customers, and that defendant, by reason of his contract, was indebted to the plaintiff in the amount of the contract price, will support a recovery of damages for a refusal to receive the goods.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 188 October Term 1889, Sup. Ct.; court below, No. 20 September Term 1888, C. P.

On July 20, 1888, the Unexcelled Fire-Works Company, a corporation of the state of New York, brought assumpsit against George Polites, filing a statement of claim which averred that in the early spring of 1888 the defendant ordered from the agent of the plaintiff certain fire-works and celebration goods, to be manufactured by the plaintiff and shipped to the defendant, at specified prices; that said goods were manufactured and shipped by the plaintiff in accordance with the order, but the defendant refused to receive them; that the goods were then of no use to the plaintiff, having been made for the defendant, according to his order, and unsalable to the other customers of the plaintiff; that they had never been returned to the plaintiff or paid for by the defendant, or any person, and that, by reason of his contract to buy them from the plaintiff at the prices agreed upon, the defendant was indebted to the plaintiff in the sum of $332.36, with interest from May 16, 1888. The defendant's pleas were non-assumpsit, payment with leave, etc.

The case was tried October 8, 1888, before HAZEN, P. J., when a verdict was rendered in favor of the plaintiff for $332.36. Afterward, on motion of the defendant, the court set the verdict aside and granted a new trial. At the second trial, on

Statement of Facts.

April 23, 1889, the following facts were shown on the part of the plaintiff:

On February 13, 1883, Alexander Morrison, an agent of the plaintiff company, called upon the defendant at his store, in New Castle, Pa., and received from him a written order for fire-works and celebration goods, amounting to $208.53. These goods, which were intended for what is known as the Fourth of July trade, were to be shipped by the middle of May to New Castle, and were to be paid for on or before July 10, 1888. A few days after the giving of this order, the defendant sent by mail to Morrison, in care of the house, an additional order for similar goods, amounting to $123.83, to be shipped to Washington, Pa., where the defendant had another store, upon the same terms. These orders were forwarded by Morrison to the place of business of the plaintiff, in New York City, and upon their receipt there, the plaintiff notified the defendant by mail that they were accepted and would be duly filled. The goods were shipped on May 15th and 16th respectively. Upon their arrival at their destinations the defendant refused to receive them, and on account of their explosive nature the common carriers returned them to New York and requested the plaintiff to take them back at once. They were subsequently stored in the plaintiff's warehouse, subject to the order of the defendant, who was notified thereof.

Charles A. Johnson, general manager of the plaintiff company testified on its behalf as follows:

"We manufacture and import our goods, and the quantities manufactured and imported are based upon the orders received. The order of the defendant entered into our estimate of goods to be made up and imported, and said goods had been made up before any order of countermand was received from the defendant. These are seasonable goods, to be used in the celebration of the 4th day of July; and if we are obliged to accept goods turned back upon our hands in this way, it would result in immediate ruin to our business. At the close of our season, on the 4th day of July, we have very large payments to meet in settlement of the contracts which we have made for the materials and labor which enter into the annual manufacture of our goods. These contracts must be based upon the orders which we have received and accepted for goods, so that it

would be impossible to place us in the same position as respects the goods ordered."

The plaintiff having rested, the defendant called John Venekos who testified that he was a clerk in the employ of the defendant; that the negotiation with the plaintiff's agent, Morrison, respecting the orders for goods on which the suit was based, was carried on by the witness on the defendant's behalf, though in his presence; that nothing was said about manufacturing any goods, and no authority to manufacture goods for the defendant was given to the plaintiff; that the witness did not know the plaintiff was a manufacturer or an importer; that in the conversation at the time of giving the first order, Morrison told the witness what kinds of goods the plaintiff had in stock, and on being asked for No. 9 cannon crackers, said "he didn't handle them;" that about April 6, 1888, the witness wrote to the plaintiff telling it to cancel the orders, as the defendant did not want the goods, to which the plaintiff replied that it would ship the goods, and the witness wrote back that he would not accept them. On cross-examination, the witness was asked:

Q. Did you receive the goods? A. No sir, I wrote them, "I will not accept them."

Q. Did you do anything before you told them you wouldn't receive the goods? A. No, sir.

Q. Did you not first telegraph to another fire-works company in New York asking them whether you would receive these goods that were sent by the Unexcelled Fire-Works Co.?

Objected to by defendant's counsel as immaterial and incompetent.

Mr. Falls, for plaintiff: It was testified to in the other case, that before these parties had refused to accept the goods, after they were shipped to them here in New Castle and to Washington, they had sent on word to another fire-works company in New York, asking them whether or not they should receive the goods, and if they would be responsible for any damage the Unexcelled Fire-Works Co. might claim from them if they refused to accept them; for the purpose of showing that the contract was not in reality rescinded until after the goods were in New Castle.

By the court: I do not see how that will show it. I cannot

see what use you could make of it. The offer is overruled; exception.[1]

The testimony of this witness concluded the evidence in the case. In the paper-book of the plaintiff it was admitted and stated as a fact that the notice countermanding the orders, testified to by John Venekos, was received by the plaintiff on April 9, 1888.

The court, McMICHAEL, J., charged the jury as follows:

[This suit is brought to recover the price of certain goods which the plaintiffs allege were sold and delivered by them to the defendant. I had supposed that the case would get to the question of how much damage the plaintiffs were entitled to receive, if any, for the defendant violating his contract and refusing to receive the goods. It does not get into that position. It is standing squarely on the position that the plaintiffs here are entitled to recover the value of goods sold and delivered. In this case, there is no evidence that the plaintiffs sold and delivered to the defendant any goods, and therefore, the plaintiffs have failed to make out that case. The plaintiffs' counsel declines to make any amendment in his pleadings in the case, and the court has no alternative but to take it as it stands on record, and that being the case or condition of things, your verdict should be for the defendant.][2]

The plaintiffs ask the court to charge you upon the following points:

1. That if the jury find that the defendant accepted unconditionally a proposition made to him by plaintiffs, then that proposition became a contract binding upon both parties.

Answer: That point is affirmed. As I understand, this point is intended to refer to the proposition made in this case and accepted by the defendant, made a contract.

2. If the jury find that plaintiffs had put themselves in the position to furnish defendant with manufactured articles, the price of which is in dispute, and that they did place themselves in this position, on the strength of the order received from defendant, before defendant had notified them that he did not want the goods, then defendant could not rescind the contract without the plaintiffs' consent.

Answer: That point is answered in this way: The defendant

could not rescind or refuse to execute that contract and not make himself liable for damages to the plaintiffs for his breach of the contract, and if he did rescind or refuse to execute it, then he would be liable to the plaintiffs for damages; for any damages that the plaintiffs might sustain by reason of the defendant's breach of the contract; and in that particular way he would not have a right to rescind it.

4. If the jury find that the goods were delivered to a common carrier, to be by them forwarded to defendant, it is a constructive delivery to defendant.

Answer: That point would be affirmed, if it were not for the evidence in the case, " that before the delivery of the goods to the common carrier the defendant had notified the plaintiffs not to deliver to the carrier, or not to forward them to him." The evidence being uncontradicted that he had so notified, then the delivery to the carrier was no delivery to the defendant.

[Gentlemen, I am sorry the case is in the shape it is, but you are not at liberty, under the pleadings here, to go into the question of whether the plaintiffs have sustained any damage because the defendant has refused to take these goods. You are confined to the question of whether the plaintiffs are entitled to recover the value of the goods, because the goods were sold and delivered to the defendant, and there not being sufficient evidence to warrant you to find a verdict on that subject, the court instruct you to find a verdict for defendant.] [2]

The jury rendered a verdict in favor of the defendant. Judgment having been entered, the plaintiff took this appeal assigning for error, inter alia :

1. The refusal of plaintiff's offer.[1]
2. The parts of the charge embraced in [ ] [2]

*Mr. W. H. Falls*, for the appellant:

1. The question which the court refused to allow to be put to John Venekos, if answered in the affirmative would have tended to show that the defendant did not contemplate a rescission of the contract, until he had an assurance from the other company that he would be indemnified in case of a suit for non-fulfilment of his contract with the plaintiff, and its exclusion was error. The contract between the parties was clearly one

of sale, binding alike on both. The plaintiff, being a manufacturer and importer of fire-works, at once put itself into a position to fulfil the contract and did fulfil it in every particular. The defendant having failed to fulfil his part, the measure of damages is the contract price of the articles ordered: Ballentine v. Robinson, 46 Pa. 177. Is there any difference what the article ordered may be, so long as it is manufactured or imported for the express purpose of filling the contract?

2. The evidence in this case is, that after the giving of the orders by the defendant and their acceptance by the plaintiff, the latter actually made up the goods, awaiting date of shipment, before receiving any notice of rescission from the defendant. The case does not differ from one in which an order is given to a manufacturer to make a specific article, and, after the work has been completed and the article is ready to be turned over to the vendee, he attempts a rescission of the contract. Under the decisions, the vendor has his election to treat the goods as the vendee's and sue for the price, or, to sell the goods and sue for the difference between the price obtained, which is the market value, and the contract price: Ballentine v. Robinson, supra; 3 Pars. on Cont., 208; 2 Benj. on Sales, § 1165; Hayden v. Demetz, 53 N. Y. 426; Mason v. Decker, 72 N. Y. 599 (28 Am. Rep. 190); Shawhan v. VanNest, 25 Ohio 490 (18 Am. Rep. 313); Holland v. Rea, 48 Mich. 218.

3. While this case is probably not one of actual sale and delivery, it is one in which a contract for specific articles was entered into, and a full and complete tender of those articles made according to the contract. It is therefore governed by the principles we have referred to, no less than a contract of sale and delivery. Since the procedure act of May 25, 1887, P. L. 271, all that is required, in lieu of a declaration, is a concise statement of the plaintiff's demand. The statement of claim in the present case gives the substance of the contract on which the plaintiff claims, and the amount claimed, viz., the contract price of the articles ordered, which is all the act requires. At the time the statement of claim was drawn, the goods were still in the hands of the carriers, a delivery to whom was a constructive delivery to the defendant.

*Mr. D. Jameson* (with him *Mr. G. E. Treadwell*), for the appellee:

1. If the witness, Venekos, had answered the question that was excluded affirmatively, the utmost that could be presumed from such an answer would be that the defendant was contemplating a withdrawal of the peremptory countermand of his orders which, it is a conceded fact, he had sent to the plaintiff five weeks before. It is also a conceded fact that this countermand never was withdrawn. It is not the contemplations of the defendant, but his acts, that the court could deal with, and his communications with third persons had no business in the case.

2. The court is relieved from the burden of construing the statement of claim, for by the plaintiff's own construction, it declares for the price of goods sold and delivered, and the plaintiff refused to amend in the court below, electing to stand upon the position that it was entitled to recover the price. Under the testimony the case is clearly distinguished from that in which an article is ordered to be manufactured according to a special design. This, many courts treat as a contract for work and labor, and, so far as it is to be regarded as the sale of anything, treat the putting of the raw material into the particular shape ordered as a delivery. This is all that is decided in the Pennsylvania and Ohio cases cited for plaintiff.

3. In the present case, as the plaintiff virtually admits, we have nothing in the name or nature of a delivery, and the plaintiff is not entitled to recover the price on the basis of a completed sale : Girard v. Taggart, 5 S. & R. 19 ; Stewart v. Kelly, 16 Pa. 160 ; 2 T. & H. Pr., § 1502 ; 1 Chitty on Pl., 346, 347 ; Haas v. Tompkins, 2 Clark 16 ; Benj. on Sales, §§ 758, 870 ; Laird v. Pim, 7 M. & W. 474, 478 ; Dunlop v. Grote, 2 Car. & K. 153 ; Thompson v. Alger, 12 Met. 428, 443 ; Allen v. Jarvis, 20 Conn. 38 ; Ganson v. Madigan, 15 Wis. 144 (82 Am. Dec. 659) ; Whittemore v. Coates, 14 Mo. 9 ; Williams v. Jones, 1 Bush. 621, 627 ; Gordon v. Morris, 49 N. H. 376. Sedgwick's Lead. Cas. on Meas. of Dam., 23, contains a full discussion of this subject.

4. The defendant neither ordered the manufacture or importation of anything, nor any specific articles, but simply certain quantities of certain classes of goods. The minds of the parties never met in the assignment of specific articles to the filling of the orders. The recovery of the price would be a

specific enforcement of a contract for the purchase of personalty. And how then could the defendant get the goods he is compelled to pay for, they being in New York? A restraint of collection of the judgment until delivery, would not affect its lien on the defendant's lands, and would afford inadequate relief. The delivery to the carrier was not a delivery to the defendant, because the authority to make it had previously been revoked.

OPINION, MR. JUSTICE CLARK:

This is an action of assumpsit, brought July 20, 1888, to recover the price of a certain lot of fire-works and celebration goods, ordered by the defendant, George Polites, from the Unexcelled Fire-Works Company, of New York, in February, 1888. The first order, which was for his store in Newcastle, was given through the plaintiffs' agent, Alexander Morrison, and amounted to $208.53; the second, sent directly to the plaintiffs, was for the defendant's store in Washington, Pa., and amounted to $123.83. These orders were in writing, and were signed by the defendant; they specified, not only the particular kind and quality of the articles ordered, but contained also a schedule of the prices to be paid therefor. The goods were to be shipped in May, and were to be paid for on the 10th day of July thereafter. Upon receipt of these orders the plaintiffs transmitted by letter a formal acceptance of them; a contract was thus created, the obligation of which attached to both parties, and which neither of them, without the agreement or assent of the other, could rescind. On April 5, 1888, the defendant, by letter, informed the plaintiffs that he did not want the goods, and notified the plaintiffs not to ship them, as he could do better with another company. The plaintiffs replied that they had accepted the orders, and had placed them in good faith, and that the goods would be shipped in due time, according to the agreement.

The goods were shipped within the time agreed upon—the first lot to New Castle, and the second lot to Washington, according to contract; but on their arrival the defendant declined to receive them. The carrier notified the shippers that, owing to the dangerous and explosive quality of the goods, they would not retain them in their possession; the plaintiffs there-

upon received them back from the carriers, and placed them on storage, subject to the defendant's order.

The plaintiffs allege that they are manufacturers and importers of such fire-works as are used in the Fourth of July celebrations throughout the country; that it is not profitable to carry these goods over from one season to another, and that therefore the quantity manufactured and imported depends upon the extent of the orders received; that the defendant's orders entered into their estimates of goods to be made up and imported for the season of 1888, and that the goods ordered by the defendant were actually made up before the order was countermanded. The defendant testifies, however, that Mr. Morrison, the plaintiffs' agent, informed him, at the time he gave the first order, that the plaintiffs had some, at least, of the articles in stock, and that he did not order any, either to be manufactured or imported on his account; that the transaction was simply a bargain and sale of goods, and not an order for goods to be manufactured or imported; and the evidence does not seem to conflict with this view of the case.

It is plain that the notice given to the plaintiffs by the defendant not to ship the goods was a repudiation of the contract; it was not a rescission, for it was not in the power of any one of the parties to rescind; but it was a refusal to receive the goods, not only in advance of the delivery, but before they were separated from the bulk, and set apart to the defendant; the direction not to ship was a revocation of the carrier's agency to receive, and the plaintiffs thereby had notice of the revocation. The delivery of the goods to the carrier, therefore, was unauthorized, and the carrier's receipt would not charge the defendant. The plaintiffs made the carrier their agent for delivery, but the goods were in fact not delivered. A delivery was tendered by the carrier, when the goods arrived at their destination, but they were not received. The action, therefore, could not be for the price, but for special damages for a refusal to receive the goods when the delivery was tendered. We think the statement was sufficient to justify a recovery of such damages, as the words of the statement were clearly to this effect; but there was no evidence given of the market value of the goods as compared with the price. It does not appear that the plaintiffs had suffered any damage. For any

thing that was shown, the goods were worth the price agreed upon in the open market.

Whilst the manifest tendency of the cases in the American courts, now, is to the doctrine that when the vendor stands in the position of a complete performance on his part, he is entitled to recover the contract price as his measure of damages, in the case of an executory contract for the sale of goods not specific, the rule undoubtedly is that the measure of damages for a refusal to receive the goods is the difference between the price agreed upon and the market value on the day appointed for delivery.

Judgment affirmed.