James B. Jones et al. v. Jennings Bros. & Co., Ltd., Appellants.

*Sale—Contract—Executory contract—Measure of damages.*

An order for the purchase of steel scrap, " similar to sample wagon load " previously delivered, is an executory contract, and no title passes until the goods are accepted by the vendee.

Where the vendee refuses to accept the goods without sufficient cause, the title remains in the seller, and the measure of damages for the refusal to accept is not the purchase price of the goods, but the difference between the price agreed upon and the market value on the day appointed for delivery.

| 168 | 493 |
| --- | --- |
| 19 SC | ²611 |
| 168 | 493 |
| 22 SC | ¹ 10 |
| 22 SC | ¹480 |
| 168 | 493 |
| 25 SC | ² 28 |
| 26 SC | ²379 |
| 168 | 493 |
| 223 | 376 |
| e38SC | ²380 |
| 168 | 493 |
| f41SC² | 652 |

494 JONES et al. *v.* JENNINGS BROS. & CO., Appellants.

Argued Oct. 24, 1894. Appeal No. 111, Oct. T., 1894, by defendants, from judgment of C. P. No. 3, Allegheny Co., May T., 1892, No. 707, on verdict for plaintiffs. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit for goods sold and delivered. Before PORTER, J.

At the trial plaintiffs claimed to recover the value of two car loads of steel scrap alleged to have been furnished under the following order:

" JENNINGS BROTHERS & COMPANY, LIMITED,
" Office, Preble Avenue, Allegheny, P. O., Pittsburg.

" No. 1,955.          Pittsburg, Pa., Dec. 1, 1891.
" MESSRS. J. B. JONES & BRO.

" Please furnish us with the following:—In our yard on Preble avenue, Allegheny, about sixty tons steel scrap similar to sample wagon load delivered to us this A. M., at $16 per gross ton (F. O. B. cars, Allegheny,) confirming verbal agreement.

" With bill, giving number of this order.

" JENNINGS BROTHERS & COMPANY, LIMITED,
" John Davis, *Treas.*

" Send Bill of Lading and Duplicate Invoice without prices."

Defendants subjected the sample to analysis. They claimed that the steel scrap delivered under the order did not correspond in quality with the sample, and refused to accept the car sent to them.

When the evidence was closed, defendants requested the court to charge as follows:

" 1. This action being for the price of merchandise sold and delivered by plaintiffs to defendants, and the evidence being uncontradicted that the merchandise was not accepted by the defendants, the plaintiffs cannot recover in this action and the verdict should be for the defendants. *Answer:* Refused. [1]

" 2. The evidence being uncontradicted that the defendants declined to receive the merchandise, if this refusal was in violation of their contract the plaintiffs could only recover for a breach of the contract, and the measure of damages would be the difference between the price agreed upon and the market value of the scrap on the day appointed for delivery, and no

evidence having been given of the market value of the goods as compared with the price, it does not appear that the plaintiffs have suffered any damage and the verdict should be for the defendants. *Answer:* Refused. [2]

"5. Under all the evidence the verdict should be for the defendants. *Answer:* Refused." [3]

Verdict and judgment for plaintiffs for $897.05. Defendants appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*W. K. Jennings,* for appellants.—The first car was never accepted by the defendants, and the second car was never delivered at all, although the verdict was for the price of both cars. The action therefore could not be for the price, but for special damages for a refusal to receive the goods when the delivery was tendered: Unexcelled Fire Works Co. v. Polites, 130 Pa. 536.

Delivery to a common carrier is a delivery to a purchaser, but such delivery is constructive merely: Braddock Glass Co. v. Irwin, 153 Pa. 440.

Delivery is not complete without acceptance, and there is a distinction between executed and executory contracts, which is pointed out by Mr. Justice WILLIAMS in Fogel v. Brubaker, 122 Pa. 7, which was overlooked by the learned judge. In regard to executory sales, he says that they " are made by sample or by description, the goods not being seen by the purchaser until they have been selected and forwarded by the seller. . . . The rule in this case is not caveat emptor, but caveat venditor, for the duty of selecting and sending the article ordered by description or by sample is on the seller . . . . As was said by this court in Dailey v. Green, 15 Pa. 126, " ' when the contract is executory, as it always is when a particular article is ordered without being seen, from one who undertakes it shall be of a given quality or description, and the thing sent as such is never completely accepted, the buyer is not bound to keep it, or pay for the article on any terms, though no fraud was intended by the vendor.' "

*Morton Hunter*, for appellees.—The verdict of the jury must be construed to be substantially a finding of the facts that the plaintiffs had delivered the goods and fully complied with the contract.

The measure of damages is the contract price, as the rule of damages, contended for by appellants, that the damages are the difference between the contract price and the market value, does not apply to cases where goods have been delivered and the plaintiff has fully performed his contract.

OPINION BY MR. JUSTICE MCCOLLUM, May 30, 1895 :

The scrap steel for the price of which this action was brought was sold by sample and to be delivered to the defendants at the place designated in the order for it. This sample was subjected to a chemical analysis, and as it proved to be satisfactory the merchandise in question was ordered on the faith of it. The material shipped in pursuance of the order did not correspond in quality with the sample and the defendants refused to accept it. The contract was executory and the ownership of the property was not changed by it. The title to the latter remained in the plaintiffs subject to the defendants' inspection and acceptance of it : Fogel v. Brubaker, 122 Pa. 7. The carrier was the agent of the plaintiffs and there was no delivery actual or constructive to the defendants. In fact it does not appear that all the merchandise sued for was conveyed to the place appointed for the delivery of it. One car load of it was hauled there, and the plaintiffs say they directed their agent to ship another car load of it to that point, but it does not appear that this direction was complied with. Assuming, however, that the agent obeyed instructions and that the second car load, as respects this issue, is on the footing of the first, did the defendant's refusal to accept the material so shipped render them liable for the price of it ? Whilst it was demonstrated by the analysis that the steel scrap in question did not correspond in quality with the sample, there was uncontradicted evidence that it was taken from the same pile and was similar in external appearance. The defendants affirmed and the plaintiffs denied that the similarity or the want of it was to be ascertained by an analytical test, and in view of the instructions the fair inference from the verdict is that the jury sustained the plaintiffs' contention in this par-

ticular. We must assume, therefore, for the purposes of our present inquiry, that the material which the defendants refused to accept was such as the contract called for.

In executory contracts for the sale of goods not specific, the measure of damages for the refusal of the buyer to accept the same is the difference between the price agreed upon and the market value on the day appointed for delivery: Unexcelled Fire Works Co. v. Polites, 130 Pa. 536. In that case "the plaintiffs made the carrier their agent for delivery but the goods in fact were not delivered. A delivery was tendered by the carrier when the goods arrived at their destination, but they were not received. The action therefore could not be for the price but for special damages for a refusal to receive the goods when the delivery was tendered." The decision in the case referred to, and from which we have quoted, is in exact accord with the rule as stated in Benjamin on Sales, secs. 758 and 870, and is not in conflict with any decision of this court. We think it sustains the defendants' contention in this case and that on the authority of it the judgment of the court below should be reversed. If the defendants were justified in their refusal to accept the goods they incurred no liability in consequence of it, but if they ought to have accepted the goods the plaintiffs were entitled to recover such damages as they sustained by the nonacceptance of them. As they failed to submit any evidence of damage the court should have directed a verdict for the defendants.

                                        Judgment reversed.