## DENVER ENGINEERING WORKS CO. v. ELKINS et al.

### (Circuit Court, W. D. Pennsylvania. July 29, 1909.)

### No. 66.

**1. CORPORATIONS (§ 398*)—CORPORATE ACTS—ACTS OF STOCKHOLDERS.**

Stockholders of a corporation cannot enter into contracts with third persons binding on the corporation, which can act only through its directors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1593–1594; Dec. Dig. § 398.*]

**2. SALES (§ 384*)—CONTRACT—BREACH—DAMAGES.**

Where a purchaser of a part of the property of a corporation failed or refused to carry out the contract, so that the corporation still retained the property sold, the purchaser was liable to the corporation, not for the price he had agreed to pay, but for damages for breach of contract consisting in the difference in the value between the property and the contract price.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1098; Dec. Dig. § 384.*]

**3. ASSIGNMENTS (§ 89*)—FOR COLLECTION.**

M., having contracted to purchase part of the property of a corporation indebted to plaintiff, and desiring to use such debt in settlement of the purchase price, obtained from plaintiff without consideration an assignment of its claim against the corporation, which agreed to accept plaintiff's claim in part payment. The contract of sale, however, was never carried out by reason of the purchaser's default, and thereafter, notwithstanding the corporation's insolvency, the claim was reassigned to plaintiff. *Held*, that the original assignment to M. was for collection only, and hence, on the sale not being consummated, the corporation's agreement to accept the claim in part payment of the price did not constitute a satisfaction of plaintiff's claim.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 137; Dec. Dig. § 89.*]

**4. PRINCIPAL AND SURETY (§ 102*)—ASSIGNMENT OF CLAIM—DISCHARGE OF SURETY.**

Assignment of a claim against a corporation to a purchaser of a part of its assets for collection only, to be used as a payment of part of the price. but which was not so used because of a failure of the sale, though the corporation had agreed to receive it as such, did not constitute a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

discharge of sureties for the corporation's payment of the debt; there being no time when the creditor was under a binding obligation not to sue the principal, under the rule that the release of a surety without payment of performance can only result from such act or omission of the creditor which proves or may prove injurious to the surety.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 181–185; Dec. Dig. § 102.*]

**5. PRINCIPAL AND SURETY (§ 129*)—SECURED SURETIES—DISCHARGE.**

Where defendants became sureties for the payment of a corporate debt for machinery purchased, which the corporation on the day before the contract of suretyship was made had placed on the part of its property which it assigned to defendants, defendants thereby acquired property of the corporation for their indemnity, and while holding such property could not claim that they were discharged from liability because of an assignment of the claim to a prospective purchaser of a part of the corporation's property and an agreement by the corporation to receive the claim in part payment.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 366–372; Dec. Dig. § 129.*]

Action by the Denver Engineering Works Company against John P. Elkins and another. Judgment for plaintiff.

Griggs, Baldwin & Pierce and Martin Conboy, for plaintiff.
Watson & Freeman, for defendants.

ORR, District Judge. The plaintiff seeks to recover from the defendants as sureties $9,500, a balance of an account with interest alleged to be due the plaintiff for mining equipment and material claimed to have been furnished by the plaintiff to the Terrenates Consolidated Mining Company, a corporation of the territory of Arizona, under a contract between the plaintiff and said company. By agreement of the parties the cause was referred. It now comes before this court upon exceptions to the report of the referee, who found for the defendants.

Some time prior to January 30, 1903, the Terrenates Company was incorporated. It had assets of prospective value in the shape of mining properties. For convenience the properties have been classified as the old Terrenates mine proper and the San Antonio group of mines. On the date last mentioned, the said company entered into a written contract with the plaintiff, whereby the latter agreed to manufacture, sell, and deliver, and the former agreed to take and pay for, certain mining equipment and material. Afterwards in the spring of 1903 the defendants, with some of their associates, purchased a majority of the capital stock of the company and took over its management and control; the defendant Elkin being elected president of the company and the defendant Eyre its treasurer. On the 29th of August, 1903, said company, as appears by those portions of its minutes offered in evidence, caused to be transferred to the said Elkin and Eyre the San Antonio group of mines and all property, real, personal, and mixed, belonging to the company to be held by them in some trust relation for the use of the company. On the 31st day of August, 1903, the said Terrenates Company took up the matter of amending its contract with the plaintiff with the intention of limiting the material and apparatus to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

be furnished by the plaintiff and limiting the amount to be paid therefor by said Terrenates Company. The plaintiff agreed to this alteration by which the amount agreed upon to be paid to the plaintiff for the apparatus thus agreed upon to be furnished was $15,956, of which $6,456 should be paid within 10 days after presentation of bills of lading, and the balance, $9,500, within 30 days after the arrival of the apparatus at Parral, if in successful operation, and, in any event, within 60 days after such arrival, unless the apparatus should have been tried and proved unsuccessful in its operation. The said defendants,. being in possession of the corporate assets transferred to them, did at the time of making the supplementary contract with the plaintiff, agree in writing by the hand of the defendant Elkin to become "responsible for the carrying out of the terms of the modified contract and the payment of the balance due thereon."

That the plaintiff performed the contract on its part is clear. It was never at any time seriously disputed. The defendants rely upon their plea of payment, which is in harmony with the averments in the affidavit of defense. The affirmative of the issue thus raised is therefore upon the defendants. See 1 Troubat & Haly's Practice, § 540, and the cases there referred to.

Pending the completion by the plaintiff of the supplementary contract, the Terrenates Company had under consideration various matters with a view to reorganizing or otherwise putting the properties in better shape for the benefit of those who were interested therein. A meeting of the stockholders was held on December 29, 1903. At that meeting there were several resolutions presented, two of which embraced two several propositions, both of which it seems necessary to consider. The first proposition was read by the defendant Elkin, and was an offer for the purchase of the title to the San Antonio group of mines and other property then held by the said defendants under the article of agreement hereinabove referred to as dated August 28,. 1903. The second·was a proposal from one Andrew D. Meloy for the acquisition of practically all the other assets of the said Terrenates Company, including the Terrenates mine proper. These two propositions were accepted at that stockholders' meeting. They were presented and accepted in the successive order as herein stated. They are so correlated one with the other that a consideration of the latter alone, as was done by the learned referee, would not be illuminating.

The substance of the first proposition is that the proposing syndicate should purchase the property held by Elkins and Eyre and pay for the same when good and sufficient deeds and conveyances were made and when titles had been vested in a corporation proposed to be formed; that the new corporation would assume payment of the then existing indebtedness of the Terrenates Company, assume the payment of money advanced to Elkins and Eyre on account of the machinery for the development work in the properties amounting at that time to about $33,000, take up certain outstanding notes, etc.; that the new company would take out a charter with certain shares of preferred stock and certain shares of common; that it should exchange stock of its company with the stockholders of the Terrenates Company upon a certain basis; that it should set aside in the name of a trustee to be

selected by the Terrenates Company a sufficient number of shares to make such exchange; and that the new corporation would agree "to furnish your company with power to operate your Terrenates mine, which is not included in this offer to purchase, at the actual cost of furnishing such power to your company, together with 6 per cent. interest annually on the investment in machinery and power plant added to such cost." The stockholders at that time assembled by resolution ratified and confirmed the plan as thus outlined and resolved that the board of directors through its proper officers be given full power to make all agreements, contracts, execute leases, deeds, etc., and do everything necessary to effectuate the proposition to make title to all of said property, real and personal, so that the indebtedness of the company may be canceled in the manner set out in said proposition. After such action, which was intended to determine the policy of the corporation with respect to the properties enumerated in the first proposition, the following resolution was offered by or on behalf of Andrew D. Meloy:

"Whereas, the proposition submitted by the board of directors to the stockholders with reference to the organization of a new company and the exchange of stock of this corporation has been approved by all the stockholders present in person or by proxy; and whereas, Andrew D. Meloy has made a proposition to the corporation to purchase from it all its stock so exchanged, including the stock in the treasury, and also all its rights and interests in and to the so-called 'Terrenates mine' proper, with all of the privileges, rights and leases thereof, and the right to the use of power as provided in the body of this resolution, for the sum of $15,000, and also has agreed that 28,000 shares of the stock of this company shall not be offered for exchange for stock in the new corporation under the plan proposed and adopted by the resolutions at this meeting: Now therefore be it resolved, by the stockholders, that this proposition be and is hereby accepted, and that the board of directors and the proper officers of the company are hereby directed to enter into a contract or contracts with the said Meloy which shall provide in substance as follows:

"(1) That all the rights of the company in and to the lease and option to purchase the said 'Terrenates mine' proper, and the right to the use of power from the new company (subject to its ability with the machinery now on the ground over and above what it may use for its own operations), upon the payment of the actual cost of producing such power, plus 6 per cent. per annum of the total cost represented by the entire machinery and power plant; or a fixed rental per horse power, if the parties may hereafter be able to agree upon same.

"(2) There shall be conveyed and assigned to Andrew D. Meloy at least 410,000 shares of the capital stock of this company, and as much more of said stock as may be turned into the new company by the stockholders of the Terrenates Consolidated Mining Company for exchange, together with the necessary assignments and transfers of said stock and the resignations of all the members of the board of directors and the officers of the company, and also the turning over of the minute books and other documents and papers in the possession of the company. It is understood and agreed that none of these acts herein specified shall take place until the formal contracts herein provided for have been executed and delivered, and the $5,000 provided to be paid has been fully paid, and the remaining $10,000 of the purchase money has been satisfactorily secured.

"(3) The said Meloy is to pay for the same the sum of $15,000, as follows: $5,000 upon the execution and delivery of the contract or contracts herein provided for, and the remaining $10,000 on or before the 1st day of July, 1904; the $10,000 last referred to to be secured satisfactorily to the new company upon the execution and delivery of the contract or contracts aforesaid.

"(4) Said Andrew D. Meloy also to agree that 28,000 shares of the stock of this company shall not be offered for exchange for stock of the new company, and the holders of at least 28,000 shares shall execute and deliver cotemporaneously with the execution and delivery of the contract or contracts by these resolutions provided for, a release to the new company of any and all claim or claims to the right of exchange of said 28,000 shares of said stock or any portion thereof, and also any and all claim or claims to any interest of any kind or character in and to the mines or property which are transferred or to be transferred to the new company.

"(5) It is understood that the 'Terrenates mine' proper is held under a lease and option to purchase, and it is also held subject to a contract with the consolidated Kansas City Smelting & Refining Company.

"The board of directors are hereby directed to prepare and enter into with the said Andrew D. Meloy a formal contract or contracts which are embodied substantially by the terms herein set forth. The contract or contracts by these resolutions provided for are to be executed and delivered on or before the 1st day of February, 1904; and until the $5,000 is paid, and the contracts executed and delivered, the possession and ownership of the property remains in this company, and all rights incident thereto."

This resolution was not quite, but almost, unanimously adopted by the stockholders. Said Meloy voted his own shares in favor of it and voted the shares for which he held proxies.

The referee held that this offer by Meloy and acceptance by the stockholders at the stockholders' meeting constituted a valid contract binding upon the corporation, as well as upon Meloy, and held that by such stockholders' action in which Meloy participated, and under the very terms of the resolution itself, Meloy became bound to pay absolutely and unconditionally the sum of $15,000. To this resolution of the referee assent cannot be given. Meloy's plan necessarily depended upon the carrying out of the first proposition presented at the stockholders' meeting, which was to be carried into effect by the board of directors. Particularly it contemplated the carrying out of the first proposition with respect to the power to be furnished by the new corporation to operate the Terrenates mine, and it contemplated the acquisition of stock which would be surrendered for shares to be issued by the new corporation intended to be formed as indicated in the first proposition.

The referee has gone a long way in arriving at the conclusion that the direction in the second resolution looked to the carrying out of contracts by the board was a direction looking to the carrying out (through further contracts) of an already existing contract, which the resolution itself disclosed. All present at that meeting could not have had other views than that an actual contract was to be entered into in pursuance of the stockholders' resolution, not only from the complexity of the matters therein and the reference to contracts to be entered into by the board, but also from the principle so commonly recognized that the stockholders of a corporation cannot enter into any contract binding the corporation. The law seems clear that stockholders cannot enter into contracts with third persons on behalf of the corporation. Such contracts must be entered into by the directors. The law is well stated in Cook on Corporations, § 709, and cases cited in the notes. See particularly Humphreys v. McKissock, 140 U. S. 304, 312, 11 Sup. Ct. 779, 35 L. Ed. 473.

The importance of noting the relation of Meloy to the Terrenates Mining Company is observed by a consideration of the following facts: In November of 1903, the Terrenates Company had paid to the plaintiff on account of the amount due or to become due on the supplementary contract $6,456, leaving a balance of $9,500, which would become due in acordance with the terms of the contract. Meloy having made his proposition to the corporation, knowing that in time, if everything were consummated, he would have $15,000 to pay, and knowing the representatives of the plaintiff, suggested to the plaintiff that the plaintiff assign to him its claim under the supplementary contract, so that he could use it when he came to pay the $15,000 as a part thereof, and representing to the plaintiff that he would thus be able to secure payment for them of the balance soon to become due under the contract, the plaintiff thereupon executed and delivered to the said Meloy, without consideration, such assignment under date of February 3, 1904, and notified the Terrenates Mining Company, through the said Elkin and Eyre, of such assignment, and that the said Andrew D. Meloy was authorized "to receive all sums due or to grow due thereon, and to receipt therefor and discharge the same as fully as we ourselves might do."

The officers or directors of the Terrenates Company and Meloy never signed a contract such as contemplated by the Meloy resolution. The subsequent negotiations between them resulted in a parol contract. Negotiations were had looking to the final consummation of the arrangement. The certificates of stock of the Terrenates Company never left the possession of the defendants. The contract relative to the use of power, although signed by the new corporation, called the United States Mining Company, was never completed by the execution of it on the part of the other contracting party. The resignations of the directors, being qualified "to take effect when the contracts provided for in the resolution of the stockholders and the shares of stock therein named have been transferred," did not become effective. The minute books and other documents and papers in the possession of the company were never turned over. Other papers were prepared to be, but never were, executed by Meloy. Meloy did not carry out his part of the arrangement. He therefore became liable to pay, not the price, but damages for the breach of his contract. "The general rule of the English law, and of many states in this country, denies an action for the price unless the property has passed, and the reason for the rule is plain. As the seller still is owner of the goods, he ought not to be given also the price for them. His damage is the difference in value between what he now has, namely, the goods, and what he would have had, if the defendant had not broken his contract, namely, the price." Williston on Sales, § 562. Note the following Pennsylvania cases: Unexcelled Fire Works Company v. Polites, 130 Pa. 536, 18 Atl. 1058, 17 Am. St. Rep. 788; Jones v. Jennings, 168 Pa. 493, 32 Atl. 51; Puritan Coke Co. v. Clark, 204 Pa. 556, 54 Atl. 350.

Having in view, then, the nature of the liability of Meloy if, as happened, he should refuse to carry out his contract, let us consider

the application by the defendants of the plaintiff's claim as a credit upon such liability, by which application defendants insist the plaintiff's claim has been paid in full. Prior to May, 1904, Meloy had continued negotiations with the defendants and had proposed that the defendants should accept the plaintiff's claim as part payment of the money to be due by him. Beginning with May the negotiations were continued by one Muhleman, as attorney in fact for Meloy. No changes in arrangements were suggested. In a proposed "contract of settlement," prepared by the defendants for the United States Mining Company, party of the first part, it was provided: "The first party will receive in part payment" the claim of the plaintiff. Under date of July 5, 1904, the defendant Elkins wrote to Muhleman:

"In concluding the deal it will be necessary for the following papers to be executed: (1) The release by Andrew D. Meloy representing 28,000 shares of the stock of the Terrenates Consolidated Mining Company. (2) The power contract which has already been agreed to. (3) The contract in reference to right of way. (4) The contract of settlement, a copy of which is herewith inclosed. (5) You will hand to us at that time original power of attorney, executed by Andrew D. Meloy, to M. L. Muhleman, giving him power to close out all contracts."

This letter and the contract of settlement contains no agreement for an actual present set-off of one demand against the other.

Another paper to be executed on final settlement, as corrected in the handwriting of the defendant Elkin, is as follows:

"I hereby acknowledge to have received payment in full of the accompanying claim of the Denver Engineering Works Company for $9,500, and release John P. Elkin and T. L. Eyre and United States Mining Company from all and every manner of liability on account of the same. Witness my hand and seal in the city and state of New York, this ——— day of ———, 1904. In the presence of ———."

Between the 5th and 13th days of July, 1904, the defendants credited Meloy on their books with the plaintiff's claim, and thereby wiped out their obligation to the plaintiff. I am unable to find sufficient evidence in the case of their right or authority to do so. It was clearly the intention that the claim should be wiped out when the agreement would be consummated, but not before.

The matter having "apparently died a slow death and disappeared," as Mr. Muhleman puts it, the plaintiff received a reassignment by Meloy of his claim and later brought this action.

The referee has also found that the defendants were discharged as sureties because the Terrenates Company, the principal, was insolvent in February, 1904, and because the plaintiff had put it out of his power to sue by its assignment to Meloy. This defense should not be sustained, not only because it does not appear in the affidavit of defense, as required by the rules of this court, but also because it is without merit. It must be remembered that the assignment to Meloy was without consideration for purposes of collection only. That being the case, plaintiff had not deprived itself of the right to sue the principal. But even if it had so deprived itself, the defendants were not discharged from liability because the sureties were not prejudiced thereby. The release of a surety without payment or performance can only result from some act or omission by the

creditor which proves or may prove injurious to the surety. 1 Story's Equity Jurisprudence, § 325. Even delay on the part of the creditor, where no valid contract for such delay exists, will not discharge the surety. Id. § 326. This is upon the theory that such delay may be beneficial to the surety. In this case at no time was the creditor or his assignee under binding obligations not to sue the principal.

Another important fact is shown by the minutes of the Terrenates Company. It appears that the machinery, etc., for which the debt was contracted, was placed on that part of the property which said company had assigned to the defendants the day before the contract of surety was made; that the right of the said Terrenates Company to the money and securities to be paid and delivered by Meloy were also assigned to the defendants and their associates; that nothing remained in the said Terrenates Company but the Terrenates mine proper. It is seen therefore that the defendants had in their hands and control assets of the principal with which to pay and discharge their liability upon the contract. The conclusion is irresistible that because of the payments made and liabilities incurred by the defendants, including the one in suit, the Terrenates Company had placed such assets in their hands for their security and indemnity.

A careful consideration of this case in all its aspects presented by the testimony, the report of the referee, and the arguments and briefs of counsel, lead me to but one conclusion; that is, that the exceptions to the report of the referee must be sustained, and that judgment must be entered for the plaintiff for the amount of its claim with interest from April 1, 1904, at which time there is no doubt the plaintiff was entitled to receive the balance due upon this contract.

It is therefore ordered that judgment be and is hereby entered in favor of the plaintiff and against the defendants in the sum of $12,536.85.