## Tete Bros. *v.* Charles Eshler, Appellant.

*Vendor and vendee—Sale by description—Warranty.*

In executory sales by description the seller warrants that the article shall be of the kind or degree and merchantable in quality.

*Sale by description—Acceptance.*

After the actual acceptance of goods and the lapse of a reasonable time to examine them and to ascertain their quality, the buyer will be deemed to have accepted them unless he then promptly exercises his right to reject· them.

Argued April 17, 1899. Appeal, No. 9, April T., 1899, by defendant, from judgment of C. P. Westmoreland Co., Nov. T., 1896, No. 5, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by RICE, P. J.

Appeal from judgment of justice in an action of assumpsit. Before McCONNELL, J.

It appears from the evidence that defendant had dealt with and purchased tea from the plaintiff. Defendant testified that the tea gave entire satisfaction to his customers except the consignment for which this suit was brought; that he had built up a trade which required his own personal supervision and that of three agents; that on March 28, 1896, he gave a written order to plaintiff for another consignment of 358 pounds of tea at the same prices and of the same quality as that purchased by him in the past. The tea was received, a payment was made on account of $25.00, a portion of the last shipment was sold by defendant to his customers and it was alleged some of the goods were returned and complaint made as to its quality and the dissatisfaction was such that it destroyed defendant's business. There was evidence tending to show that complaints were made by defendant to plaintiff of the quality of the tea and that on July 2, 1896, he offered to return same to plaintiff but they refused to take it. The billheads of the plaintiff which were sent with the tea had written on these words, " All claims must be made immediately on receipt of goods." There was also evidence tending to show that the tea was not bought

nor sold as first quality tea but defendant contracted to pay for it at about sixteen to twenty-two cents a pound and that he sold it at prices varying from fifty cents to $1.00 a pound.

Defendant submitted the following points :

[1. There is an implied warranty of wholesomeness in a sale of tea, and if you believe that this tea was unwholesome when received by defendant plaintiffs cannot recover. *Answer :* I do not recall any testimony that makes an answer to that question pertinent to this case, and the point is refused.] [2]

[2. If you believe this tea was unsalable when received plaintiffs cannot recover. *Answer :* That we refuse.] [3]

The court charged the jury as follows :

[When was complaint made ? Was there a reasonable length of time in which to know both the quantity of goods and whether they were the goods that were ordered ? Is it reasonable that a wholesaler is to wait until the retailer sell his goods and says whether it is satisfactory to the trade or not ? In the absence of any agreement that the wholesaler made such a bargain we do not think it would be presumed that he wait until he would ascertain how these goods would be received by the trade.] [1]

Verdict and judgment for plaintiff for $34.03. Defendant appealed.

*Errors assigned* were (1) to portion of the judge's charge, reciting same. (2, 3) In answer to defendant's points, reciting points and answers.

*Jas. L. Kennedy*, for appellant.—The instructions referred to in the first assignment of error were misleading and unfair, for the reason that there was an entire failure of consideration and breach of condition precedent. A vendee ought to be allowed considerable time to learn the nature of 358 pounds, more than a sixth of a ton, of tea.

In support of the second assignment of error, it always was the law of Pennsylvania that there is an implied warranty of wholesomeness in a sale of provisions, and the Act of May 4, 1889, P. L. 87, clinches that doctrine.

In support of the principle that the goods furnished must be salable, the court is respectfully referred to Fogel v. Brubaker,

122 Pa. 7, Davis v. Koenig, 165 Pa. 347, and Benjamin on Sales, sec. 140.

*Cyrus E. Woods*, with him *Paul H. Gaither*, for appellees.— It clearly became the duty of the defendant to examine into the character and quality of the goods in accordance with the contract of sale. The means of knowledge were at hand and available to him, and the subject of purchase was open to his inspection. This inquiry became a duty, and his failure to perform that duty estops him at this late day from setting up his lack of knowledge as a defense: Jaques v. Weeks, 7 Watts, 261; Hood v. Fahnestock, 1 Pa. 470; Maul v. Rider, 59 Pa. 167; Lodge v. Simonton, 2 P. & W. 439; Ogden v. Porterfield, 34 Pa. 197.

OPINION BY RICE, P. J., July 28, 1899:

This was an action for the price of a quantity of different kinds of tea, shipped by wholesalers doing business in Philadelphia, to a retailer doing business in Westmoreland county, upon a written order of the latter. The defendant asked the judge to charge the jury that if the tea was either " unwholesome " or " unsalable " when it arrived, the plaintiffs could not recover. The judge could not have charged as.requested without treating as wholly immaterial the facts, that one of the express terms upon which the tea was shipped was that " all claims " (evidently including a claim that the tea was not of the grade or quality ordered), " must be made immediately on receipt of goods; " that the defendant made no complaint until three months after the tea was received, and even then did not intimate an intention to reject it; that in the mean time he had ample opportunity to examine it, and to ascertain its quality, and had, in fact sold part of it; and that he had not even opened one or two of the chests at the time of the trial. Upon what theory he could ask a jury to find that the tea contained in these chests was unwholesome or unsalable at the time it arrived has not been explained. But passing this, the facts above recited were not immaterial upon the question of the plaintiff's right to recover anything. This was the only question raised by the defendant's points, and is the only question we are to consider in disposing of the second and third assignments of error.

It is to be borne in mind, that no special grade of the different kinds of tea specified in the order was contracted for. It is very evident both from the prices and from the testimony of the witnesses, that it was a low and not a high grade that was ordered. And as to the evidence of its unsalableness, we remark in passing that it is not to be marveled that the defendant's customers found fault with the quality of tea which he bought at the wholesale price of fourteen to twenty-two cents a pound, and sold at retail for fifty cents and more a pound. It cannot be said that goods are unsalable merely because the buyer cannot sell them at the price he sees fit to put on them, and it is very questionable whether the evidence fairly shows more than this. We need not, however, go into that question, for it is clear, that, whether the tea was of the quality the defendant had a right to expect or not, he was not entitled to an unqualified affirmance of his points.

In executory sales, by description, the seller warrants that the article shall be of the kind ordered, and merchantable in quality: Fogel v. Brubaker, 122 Pa. 7. By this is meant, that it shall be salable in the market under the denomination mentioned in the contract: Benj. on Sales, sec. 673 *a*, note 15. "When the contract is executory, as it always is where a particular article is ordered without being seen, from one who undertakes it shall be of a given quality or description, and the thing sent as such is never completely accepted, the buyer is not bound to keep it, or pay for the article on any terms, though no fraud was intended by the vendor:" Dailey v. Green, 15 Pa. 118, 126. After the actual reception of the goods, and the lapse of a reasonable time to examine them and to ascertain their quality, the buyer will be deemed to have accepted them, unless he then promptly exercises his right to reject them. This right must be exercised not only promptly but unequivocally. Mere complaints as to the quality of the goods, while exercising dominion over them inconsistent with ownership in the seller, are not sufficient. What the court said upon this subject (first assignment) was entirely correct, and applicable to the facts of the case.

As soon as the goods are accepted, the title passes to the buyer, and if there was no fraud or deceit in the sale, he cannot thereafter, revest title in the seller without the latter's consent. It follows that after full acceptance, especially if it be under cir-

cumstances from which a waiver of strict performance on the part of the seller, may be found, the buyer is not at liberty when sued for the price, to avoid the contract in toto.

Whether or not, and under what circumstances, he may accept the goods and retain his right to damages for noncompliance with the contract, is another question not distinctly raised by the assignments of error. It is sufficient for present purposes to say that the court could not have affirmed the points without holding, as a matter of law, that the evidence was insufficient to warrant the jury in finding that there was an acceptance and a waiver, or assuming as a matter of fact, that the goods were absolutely worthless. This would have been grave error.

The assignments of error are overruled, and the judgment is affirmed.