## Morse, Williams & Company v. Arnfield & Son.

*Building contract—Acceptance—Elevator and attachments.*

A contract to erect and equip an elevator is not a building contract. It is not such erection or fixture so firmly attached to the realty as to compel the defendants to accept it. The purchasers have it within their power to accept or refuse upon its completion.

*Contract—Express warranty—Measure of damages.*

An elevator having been put in under an express warranty, the breach of the warranty can be set up as a defense to the balance due on the purchase money; but the elevator being delivered in 1898 and the case tried in 1900, defendants were entitled only to such credit as would have been reasonably required to make the elevator conform to the specifications at the time of delivery, not at the time of the trial.

Argued May 8, 1900. Appeal, No. 226, April T., 1900, by plaintiffs, in a suit of Morse, Williams & Company, for use of J. J. Seelar, against M. Arnfield & Son, from judgment of C. P. No. 1, Allegheny Co., Dec. T., 1898, No. 316, on verdict for defendant. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed. Opinion by BEAVER, J.

Assumpsit. Before STOWE, P. J.

It appears from the record that the contract was made for the furnishing of an elevator for the price of $1,500 on which $750 was to be paid upon delivery of the material, and the remaining $750 when the contract was completed. That the time fixed in the contract was September 2, 1898. On September 2, 1898, defendants took possession and began to operate the elevator and have continued to use and operate the same ever since. The payment of the first instalment of $750 was admitted to be paid. The claim was for the balance due on the contract. Defendants claimed a set-off as to the cost of making the entire elevator conform to the guarantee under which it was sold.

#### ESSENTIAL FACTS FOUND BY THE SUPERIOR COURT.

" Plaintiffs agreed to put in place in the store building of the defendants an elevator to be run by electricity according to certain specifications, the alleged material parts of which are contained in the appellants' paper-book. Under these specifications, it was made the duty of the owners ' to prepare and enclose the hatchways, provide pit in lower floor to allow car to land level with same, prepare a place for the machine and do all cutting of walls necessary to get same in place, provide proper supports for guide posts and sheave beams and do all painting ; also provide sufficient head room to allow the car to travel to first landing and, if necessary, to put the sheaves and sheave beams on the roof ; the owner shall protect them.' It was also made the duty of the owners to bring the wiring for the necessary power to the machine. The plaintiffs, on their part, were to furnish the elevator complete with an electric motor and cables, drum, sheaves and safety appliances as specified. The specifications contained the following clause : ' The whole apparatus will be erected in a substantial manner, in accordance with these specifications, of first-class material and workmanship, free from defects and, should any appear in a reasonable time, we will make the same good at our expense.' The elevator was finished and ready for use on the day specified in the contract, according to the terms of which payment was to be made, ' one half when the machinery is delivered at the building, balance upon completion.' The defendants took possession of it and operated it continuously from that day forward. On Novem-

ber 10, following, a new magnet connected with the electric motor was furnished by plaintiffs, as they allege, on the order of the defendants, not to take the place of one that was originally defective but of one which had, for some reason, been rendered useless. This, however, except as to the mere furnishing of the magnet, is specifically denied by defendants.

" On November 14, 1898, the defendants' architect gave notice in writing to the plaintiffs' manager that the elevator was not satisfactory and that he would ' insist on the work being carried out in conformity with your specifications and details of agreement dated July 26, 1898.' Plaintiffs claim that this notice was the first received by them of any dissatisfaction on the part of the defendants with the elevator. Defendants, on the other hand, allege that verbal notice was given by them to the plaintiffs or their manager soon after the plant was installed and before the written notice of November 14. It will be noticed that all preparation for receiving the elevator, for conveying the power to it, for the erection of the supports and roof for it, and indeed everything connected with the preparation of the building for its reception and running were made or to be made by the defendants and that plaintiffs were to furnish only the elevator proper complete, including power, equipment and all necessary safety appliances, as specified.

" Defendants paid the one half of the contract price of the elevator but failed to pay the balance upon completion, and now allege that the elevator was defective : first, in that there were but four cables instead of six; second, that the drum upon which the cables were wound was but twenty-four inches in diameter instead of thirty-four as specified; third, that the sheaves were not of as large diameter as could be used, and fourth, that the special speed governor provided for in the specifications was entirely omitted."

Plaintiff submitted certain points, which points and answers are as follows :

[1. If the jury believe from the evidence that the plaintiffs, on September 2, 1898, being the time fixed in the contract, completed the elevator, and the defendants took possession thereof and began to operate the same, and continued for several months thereafter to use and operate said elevator, without making objection or complaint or requesting plaintiffs to

make any changes, additions or corrections thereto, the defendants are liable for the remainder of the contract price remaining unpaid, with interest thereon from September 2, 1898. *Answer :* Refused.] [1]

[2. The contract upon which this suit is based contains the following provisions, inter alia : " Payment to be due and payable as follows : One half when the machinery is delivered to the building, balance upon completion," and the contract also provides that " Morse, Williams & Company will have all work in connection with the elevator completed, and have elevator in running order on September 2, 1898." It was, therefore, the duty of the defendants when notified by the plaintiff that the elevator was complete and in running order on September 2, 1898, either to accept or reject the same immediately, or within a reasonable time thereafter, and if the jury believe from the evidence that the defendants took possession of said elevator and began to operate the same, and continued to use and operate the same for a period of over two months thereafter without objection, that was not a reasonable time, and defendants are, therefore, liable for the balance of the contract price, with interest thereon from September 2, 1898. *Answer :* Refused.] [2]

[3. If the jury believe from the evidence that the plaintiff substantially complied with the contract, and delivered to the defendants the elevator in complete running order at the time specified in the contract, the defendants, by taking possession thereof, and using and operating the same without objection or complaint, waived any minor defects therein, or any slight departure from the specifications. *Answer :* Refused. There is nothing shown by the evidence in the case justifying the legal conclusion that the defendants waived any defects or departure from the specifications.] [3]

Defendants submitted among others the following point:

1. The defendants are entitled to a credit for such sum as would be reasonably required in making such material changes, corrections and alterations as are necessary to make the elevator conform to the specifications under which the plaintiffs agreed to construct the elevator. *Answer :* Affirmed.] [4]

The court charged the jury in part as follows :

[The law would hold that he had waived any objection to

it in a case of this kind, but that does not apply to building contracts or to cases of complicated machinery, the effect and value of which and the operation of which can only be determined by its use.] [5]

Verdict and judgment for defendants. Plaintiffs appealed.

*Errors assigned* were (1–3) refusal of plaintiffs' points, reciting points and answers. (4) In affirming defendants' first point, reciting point and answer. (5) To a portion of the judge's charge, reciting same.

*W. K. Jennings*, for appellants.—The general rule is very clearly set out in the case of Tete Bros. v. Eshler, 11 Pa. Superior Ct. 224, as follows: " When a contract is executory, as it always is where a particular article is ordered without being seen, from one who undertakes it shall be of a given quality or description, and the thing sent as such is never completely accepted, the buyer is not bound to keep it or pay for the article on any terms, though no fraud was intended by the vendor:" Dailey v. Green, 15 Pa. 118, 126.

" After the actual reception of the goods, and the lapse of a reasonable time to examine them and to ascertain their quality, the buyer will be deemed to have accepted them, unless he then promptly exercise his right to reject them. This right must be exercised not only promptly but unequivocally. Mere complaints as to the quality of the goods, while exercising dominion over them inconsistent with ownership in the seller, are not sufficient. . . . As soon as the goods are accepted, the title passes to the buyer, and if there was no fraud or deceit in the sale, he cannot thereafter revest title in the seller without the latter's consent."

The continued use of the machinery in the promotion of his own business interests, with knowledge of its imperfections, was an unequivocal act of acceptance which no words of his own could qualify: Reed v. Randall, 29 N. Y. 358; Beck v. Sheldon, 48 N. Y. 365; Dutchess Co. v. Harding, 49 N. Y. 321.

*Joseph Stadtfeld*, for appellees.—The specifications contained a guarantee. The evidence showed an absolute failure and re-

fusal on part of plaintiffs, up to time of trial, of any attempt on their part to comply with the request of the defendants to make the elevator conform to the specifications.

OPINION BY BEAVER, J., October 8, 1900 (after finding tne facts as set out in the-statement of facts) :

The contract in this case is not a building contract. It is not such an erection or fixture so firmly attached to the realty as to compel the defendants to accept it. They had it within their power to accept or refuse to accept upon its completion. The lack of two cables, the difference between a thirty-four inch and a twenty-four inch drum and the absence of the speed governor were all plainly apparent, if even a cursory inspection had been made by one not an expert. The defendants accepted the elevator with these deficiencies or differences between the specifications and the elevator as completed and used it continuously from the 2d day of September until the 14th day of November, without any notice of dissatisfaction or of lack of completeness, according to the plaintiffs' testimony, and in the letter of the architect no notice of what is defective and no details of the changes desired are contained.

The trial judge in the general charge, referring to the delivery of a carriage built contrary to the instructions of the vendee and received by him despite the difference, said : " The law would hold that he had waived any objection to it in a case of that kind but that does not apply to building contracts or to cases of complicated machinery, the effect or value of which and the operation of which can only be determined by its use." As already intimated, we do not regard the agreement, under which the elevator was erected, as a building contract, nor was there any time fixed in the specifications within which it was to be tried. Most of the defects alleged by the defendants were plainly apparent when it was alleged to be completed. That was the time for them to speak. By accepting it and running it continuously, they destroyed its value to the plaintiffs as new machinery. The language of the court below, as quoted above, which is assigned for error, is correct in itself but it does not seem to us that it applies to the present case. An elevator simply put in place, with the building prepared for its reception by the owner and wire for furnishing power carried to the point

of connection, is not more complicated than the town clock in Dewey v. Erie, 14 Pa. 211; nor is it more of a permanent fixture than the heating furnaces in Butler v. School District, 149 Pa. 351, or the engine and boiler in Hickman v. Shimp, 109 Pa. 16, or in Armor Lith. Co. v. Allegheny Machine Co., 1 Mon. 84. But this is not the crux in this case.

What is called the "guarantee" in the specifications is an express warranty upon which the defendants, if they had paid the purchase money, could have recovered and the breach of which can be set up as a defense to the payment of the balance unpaid. In view of this, we cannot see how the plaintiffs were in any way injured by the remarks of the trial judge complained of in the fifth specification of error, nor in this view of the case is there error in the refusal of the first, second and third points for charge, of the plaintiffs, as assigned for error in the first, second and third specifications.

The fourth specification relates to the affirmance by the court of the defendant's first point, which is as follows : " The defendant is entitled to a credit for such sum as would be reasonably required in making such material changes, corrections and alterations as are necessary to make the elevator conform to the specifications under which the plaintiffs agreed to construct the elevator." The defendants were not entitled to unqualified affirmance of this point. The answer should have been limited both as to time and as to the character of the changes, corrections and alterations to be made. The case was tried in January, 1900. The elevator was delivered to the defendants in September, 1898. They were entitled to a credit for such sum and such only as would have been reasonably required to make the changes, corrections and alterations necessary to make the elevator conform to the specifications at the time of the delivery. The testimony had not been limited as to time nor as to the character of the changes necessary to be made and the general affirmance of this point left the jury, in the way the case was submitted, to fix a sum, based upon such testimony as that of Marshall, who made the examination of the elevator within a few days of the trial and whose testimony evidently related to changes which would make the elevator conform to the specifications at the time at which he made the examination, and of a character which would evidently have revolutionized the

140, (1900).]          Opinion of the Court.

machine. The question was not what would have made the elevator conform to the specifications at the time of trial, but what would have been required in the way of labor and materials to make it conform to the specifications on September 2, 1898, preserving the distinctive characteristics of the Morse, Williams & Company elevators. We think the unqualified affirmance of the defendants' first point was so broad that the plaintiffs were injured thereby. The fourth specification of error is, therefore, sustained.

Judgment reversed and a new venire awarded.