# Spiegelberg *v.* Karr, Appellant.

*Contract—Sale—Sample—Warranty—Duty of inspection—Rescission.*

Where goods are bought by sample, it is the duty of the purchaser to inspect them within a reasonable time after receiving them, and when the defect is ascertained he is bound either to elect to rescind the contract, so far as possible, or to treat it as a subsisting one, and sue on the warranty. In such a case. the right of rescission must be exercised not only promptly, but unequivocally; mere complaints as to the quality of the goods while exercising dominion over them inconsistent with ownership in the seller are not sufficient.

What is a reasonable time, or undue delay, when the facts are not disputed, is a question of law to be determined by the court. If the goods are Madras shirtings, and there is an undisputed delay of five months, the court may say as a matter of law that the rescission cannot be allowed.

Argued Oct. 16, 1903. Appeal, No. 151, Oct. T., 1903, by defendant, from order of C. P. No. 1, Phila. Co., March T., 1903, No. 3,840, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Levi Spiegelberg et al., trading as L. Spiegelberg & Sons, v. Jacob Karr, trading as Jacob A. Karr & Company. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Assumpsit for goods sold and delivered.

Rule for judgment for want of a sufficient affidavit of defense.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was the order of the court making absolute rule for judgment for want of a sufficient affidavit of defense.

*A. J. Bryan*, with him *Jacob Singer* and *Emanuel Furth*, for appellant.—The contract of sale was executory, and if the goods did not correspond with the sample, defendant had a right to refuse acceptance. The notice the defendant gave to plaintiffs and the offer to return was tantamount to refusal to accept: Fogel v. Brubaker, 122 Pa. 7; Jones v. Jennings Bros. & Co., 186 Pa. 493 ; Tete Bros. v. Eshler, 11 Pa. Superior Ct. 224; Baltimore Brick Co. v. Coyle, 18 Pa. Superior Ct. 186.

*Isaac Hassler*, for appellees, cited: Tete Bros. v. Eshler, 11 Pa. Superior Ct. 224; Baltimore Brick Co. v. Coyle, 18 Pa. Superior Ct. 186; American Watch Tool Co. v. Reed Mfg. Co., 18 Pa. Superior Ct. 24.

OPINION BY ORLADY, J, March 14, 1904:

This is an action to recover a balance due on a book account for goods, to wit: Miromont madras, sold and delivered to the defendant; the shipments being made on October 28; December 3, December 20, and December 24, 1902. The defense is the merchandise was purchased "upon samples exhibited which consisted of pieces of Miromont Madras Linen of various designs and first quality, and the price agreed to be paid was the prevailing market price for the merchandise of the character designated, and first quality," but that the goods delivered were of second quality and worth about one and one half cents per yard less than the same goods of first quality; and that such " defects are rarely discoverable until the merchandise is manufactured into the finished garments, and then it appears that the same garment contains colored designs of two or more different shades." " In the first quality the colored designs contained therein are bright and of equal and unvarying lustre, while in the second quality the colors are not brought out equally owing to defects in printing." The defendants relying upon the fact that the linen in question was of first quality, began the manufacture thereof into shirts about January, 1903. A large quantity of the linen was cut and manufactured before the defendant could possibly have been aware of the fact that the linen was of second quality, thereby reducing the market value thereof and occasioning a positive loss of $1.25 per dozen on 372 dozen shirts. The defendant had on hand 14,096 yards of the linen which he had not used, and they had used in making the shirts, 9,478 yards thereof. A rule for judgment for the portion of the claim as to which the affidavit of defense was deemed insufficient was made absolute for $1,302.21, with leave to plaintiff to proceed for the balance. This amount is ascertained as follows: The whole of plaintiff's claim was $1,961.96 less $300 cash paid on account, or $1,661.96. Deducting therefrom one and one half cents per yard on the whole shipment of 23,574 yards, or the sum of $353.61, to

which is to be added $6.14 as freight charges, will leave $359.75 as the full amount to which the defendants are entitled as set-off on this phase of the defense.

The defendants urge that the contract was executory and that inasmuch as the goods delivered did not correspond with the samples exhibited, the notice given to the plaintiff in connection with the offer to return the goods was tantamount to a refusal to accept, so that the contract was rescinded. On February 2 the defendants wrote to the plaintiffs "advising them of the defects in the shirts," and on February 27, and again on April 16, they made "an additional complaint of the same character." After a conference with the plaintiffs' agent in regard to the alleged defect, they paid on April 18, $300 on account of the claim, at which time, after deducting the amount of linen made into shirts, they had on hand about 14,000 yards, which they aver they have "repeatedly tendered the return of to the plaintiffs and which they have failed and refused to receive;" but, it is not stated where, when or to whom the tender was made. Nor is it directly averred that the goods not yet manufactured were of second quality, but only that they "determined not to take any further risk in manufacturing the same until the question of quality had been previously determined." If it were not possible by any reasonable inspection of the linen to ascertain its quality until it would be manufactured into shirts, they should have protected themselves by their contract; but there is nothing in the case to suggest such an anomalous character of marketable goods. The defendants were bound to inspect the goods within a reasonable time after receiving them, and when the defect was ascertained they were bound then either to elect to rescind the contract so far as possible or to treat it as a subsisting one, and sue on the alleged warranty. It appears that no effort was made to inspect the goods and thus determine whether they were of first or second quality, until after they had the linen for more than two months. The difficulty of ascertaining this fact emphasized their duty to act promptly; but assuming that this delay might be excused for the reason they give the claim, that nearly 10,000 yards of the unmanufactured linen were of uncertain quality, which they held for more than three additional months, during which time they did nothing further than to make complaints in regard to them becomes a doubtful one by their

own delay. They were bound to make their election within a reasonable time ; and what is a reasonable time or undue delay where the facts are not disputed is a question of law to be determined by the court : Morgan v. McKee, 77 Pa. 228 ; Davis v. Stuard, 99 Pa. 295. The right of rescission must be exercised not only promptly, but unequivocally ; mere complaints as to the quality of the goods, while exercising dominion over them inconsistent with ownership in the seller are not sufficient : Tete Bros. v. Eshler, 11 Pa. Superior Ct. 224 ; Morse v. Arnfield, 15 Pa. Superior Ct. 140 ; American Watch Tool Co. v. Reed Mfg. Co., 18 Pa. Superior Ct. 24 ; Baltimore Brick Co. v. Coyle, 18 Pa. Superior Ct. 186 ; Hilliard v. Allegheny Geometrical Wood Carving Co., 173 Pa. 1. Under these decisions a rescission of the contract cannot be allowed as to the uncut goods, and the only substantial defense suggested is the difference in the price between the linen of first and second quality, and this is assuming that the defendants were justified in delaying action in the matter until they had made the test of manufacturing the goods into garments.

As the record is presented, we overrule the assignments of error and affirm the judgment.