## Blair *v.* Ford China Company, Appellant.

*Practice, C. P.—Rules of court—Admissions—Affidavit of defense.*

Courts have power to enact rules that items of account and averments in statements of claim not denied by an affidavit of defense, shall be taken as admitted.

Where the affidavit of defense denies certain items of the statement, it is error to permit such items of the statement to be read to the jury together with the other items not denied.

*Sale—Contract—Evidence—Quality of goods.*

In an action to recover the price of decalcomanias, the defendant claimed that the goods were defective and that the defect could not be discovered until after the decalcomania had been applied to the china and actually burnt in the kilns. The defendant introduced testimony as to the manner in which the application had been made, and the china subsequently burnt, and undertook to show that this had been skillfully done at defendant's factory. *Held*, that it was competent for the plaintiff to show in rebuttal that the very same goods when skillfully handled at another factory produced satisfactory results, inasmuch as such evidence directly tended to establish that the fault was not in the goods, but in the manner in which the defendant treated them.

*Sale—Contract—Refusal to receive goods—Measure of damages.*

The measure of damages for a refusal to receive goods, which a defendant had contracted for, is the difference between the price agreed upon and the market value at the time appointed for delivery. If the goods were made specially for the defendant, and had no value whatever in the general market, the plaintiffs can prove those facts. Those are facts which the plaintiffs must prove. When there is a conflict of testimony as to the controlling facts which must determine whether goods are made for a particular

person and to answer only a specific contract, or are merely general merchandise in the market, the disputed facts, if they are to have any bearing upon the measure of damages, must be submitted to the jury for their determination.

*Sale—Contract—Inspection—Right to reject goods.*

Where a purchaser has a full opportunity to inspect goods bought and he finds that they are not such as he had contracted for, he must reject them with reasonable promptness and unequivocally. If he delays for months, the burden is on him to show why the defect in the goods had not been sooner discovered, and the goods promptly returned.

Argued May 9, 1904. Appeal, No. 94, April T., 1904, by defendant, from judgment of C. P. Armstrong Co., March T., 1902, No. 52, on verdict for plaintiff in case of Frank L. Blair, et al. v. Ford China Company. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Assumpsit for goods sold and delivered. Before PATTON, P. J.

The facts appear by the opinion of the Superior Court.

The court charged in part as follows:

[As I understand the evidence, but that is entirely for the jury, this bill of the plaintiffs is not disputed. There is no evidence in the case as to the discounts. As to these other matters, if I recall the testimony, all these goods were ordered and were shipped and delivered. If there were nothing else in the way, the defendant corporation would be bound to pay the plaintiffs this sum of $2,860.91. The plaintiff admits credits to the amount of $1,557.28, which reduces their claim to $1,303.93. The defendant claims a credit of and has shown vouchers amounting to $1,578.05, which make a difference of $20.77 in the credits claimed and allowed. The vouchers are in evidence, and the jury will have to work out that discrepancy as best you can. Taking the plaintiff's statement, they claim from the defendant, the sum of $1,303.63, which is comparatively undisputed.] [3]

[The other items are goods never received $450 and $337.95. You recollect that the contract was, that he was bound to receive so many goods in their hands, after repudiating the contract. He never did receive them, but under his

contract, he was bound to pay for them, unless he repudiated the contract, or unless the goods did not come up to the sample shown him. So those are the three items that he disputes namely, the $493.65, for goods returned, and the $450 and $337.95 for goods never received. Mr. Wick in his affidavit of defense here admits that the plaintiff is entitled to recover $1.26. If you find that his contention is true, as explained to you, then your verdict should be for the plaintiff for $1.26. If you find in favor of the plaintiff, as we have explained, but the whole matter is for you to determine, then your verdict should be for $1,303.63 with interest from ninety days from the dates these various goods were delivered.] [7]

Plaintiff presented these points:

8. The plaintiff sues to recover in this case for the price of decalcomania Nos. 231 and 232, certain varnish and also fish sets, and there being no evidence of complaint by the defendant as to the varnish or fish sets, and it appearing that the last decalcomania of either numbers 231 or 232 was shipped to defendant as early as April 14, 1902, and that said defendant did not attempt to rescind the contract of December, 1901, until December, 1902, and it further appearing from the uncontradicted evidence, that by reason of the long lapse of time and nature of the decalcomania, said decalcomania had become of no value in the market by December, 1902, the defendant could not at that late date rescind the contract and the verdict of the jury should be for the amount of plaintiff's claim, namely $2,860.91, less the cash credits claimed by the defendant in his affidavit of defense, nearly $1,578.05, or the sum of $1,282.86. *Answer:* The facts are submitted to the jury, and if they find them to be as stated in the above point, then the plaintiff would be entitled to recover.] [8]

10. The facts being as stated in point number eight, the plaintiff is entitled to recover for the decalcomania Nos. 231, 232 on hand June 1, 1902 when defendant ceased sending in his orders for the same, namely 3,000 sheets of 231 and 2,253 sheets of 232, in all 5,253 sheets at fifteen cents per sheet, or $787.95. *Answer:* The facts stated in the above point are for the jury.] [10]

*Errors assigned* were (1, 2) rulings on the evidence referred

to in the opinion of the Superior Court; (3,.7, 8,10) above in-
structions, quoting them.

*M. F. Leason* and *C. E. Harrington*, for appellant, cited:
Jones v. Jennings, 168 Pa. 493; Unexcelled Fire-works Co.
v. Polites, 130 Pa. 536; Puritan Coke Co. v. Clark, 204 Pa.
556; Gallagher v. Whitney, 147 Pa. 184; Hooper, Seving &
Co. v. Carpet Co., 11 Pa. Superior Ct. 634; Fogel v. Brubaker,
122 Pa. 7; Keeler Co. v. Schott, 1 Pa. Superior Ct. 458; Himes
v. Kiehl, 154 Pa. 190; Singerly v. Thayer, 108 Pa. 291; Boiler
Works v. Schnader, 155 Pa. 394; Seeley v. Welles, 120 Pa. 69;
Tete Bros. v. Eshler, 11 Pa. Superior Ct. 224; Billmeyer v.
Wagner, 91 Pa. 92; McCormick Machine Co. v. Nicholson, 17
Pa. Superior Ct. 188; Morse, Williams & Co. v. Armfield, 15
Pa. Super Ct. 140; Lukens v. Aikens, 174 Pa. 152.

*H. L. Golden*, for appellee, cited: Ballentine v. Robinson,
46 Pa. 177; Fire-works Co. v. Polites, 130 Pa. 536.

OPINION BY PORTER, J., October 17, 1904:

The plaintiffs had filed with their statement a copy of their
account as taken from their book of original entry, including
the items of credit, the whole verified by affidavit.   Section 4
of rule 3 of the court below provides that when a copy of the
account is so filed, the same shall be admitted in evidence
on the trial, unless the defendant, by affidavit filed with or be-
fore the plea filed by him, shall state that he has had no such
dealings with the plaintiff as those stated in the account filed;
and section 6 of the same rule provides that when a plaintiff
shall file on or before the return day of the writ, a specification
of the items of his claim, and statements of fact necessary to
support it, verified by affidavit, such items of the claim and
material averments of fact as are not directly traversed or
denied by the affidavit of defense, shall be taken as admitted.
Rules of court of this character have been so frequently sus-
tained that it is not necessary to cite specific authorities in
support of the power of the court to make them.   The plain-
tiffs offered in evidence their statement, in filing which they
had complied with the conditions prescribed by these rules.
As to the items of the claim which were not directly traversed

by the affidavit of defense, the statement was not only admissible in evidence, but under the rule those items were to be taken as admitted. We have examined the statement and the affidavit of defense and are convinced that as to all except the last two items, being $450 and $337.95, respectively, the statement was properly admitted in evidence. The affidavit of defense did not deny that the contracts had been made as set forth in the plaintiff's statement, nor that all the goods, down to and including the item of October 2, 1902, $253.26, had been sold and delivered to them as in the statement averred. The counsel for the plaintiffs, in stating the facts which it was proposed to prove by the statement, included the allegations with regard to the last two items, being for goods which it was acknowledged had not been delivered to the defendant. The affidavit of defense had specifically denied liability for these items, and the allegations of the statement with regard to them ought not to have been permitted to be read to the jury. The plaintiffs were bound to establish by competent evidence their right to recover those two items of their claim. The offer of the statement, in the form in which it was made, was received as made notwithstanding the objection of the defendant, and the first specification of error must be sustained.

The defense was upon the ground that the goods delivered were defective, in that they did not come up to the sample and were not fit for the purpose for which in the contemplation of both parties they were intended to be used. The defendant had introduced evidence which tended to establish that the defect was of such a character that it could not be discovered until after the decalcomania had been applied to the china and actually burnt in the kilns. Whether the unsatisfactory results established that the decalcomania was defective, depended altogether upon whether it was properly applied to china that was in good condition and afterwards skillfully handled. The defendant introduced testimony as to the manner in which the application had been made and the china subsequently burnt, and undertook to show that this had been skillfully done at their factory. It was competent for the plaintiffs to show in rebuttal that these very same goods when skillfully handled at another factory produced satisfactory results. Such evidence directly tended to establish that the

fault was not in the goods, but in the manner in which the defendant treated them. The second specification of error is overruled.

The defendant company had agreed that if it discontinued the ordering of two certain patterns of the goods it would take such stock thereof as the plaintiffs had on hand of the same, up to 3,000 sheets of each. The plaintiffs claimed the right to recover under this convenant the last two items of their claim, amounting to $787.95. The plaintiffs did not distinctly aver in their statement that they had these goods on hand at the time the defendant company ceased ordering in May, 1902; they rested upon the averment that, at the time the statement was filed, they held the goods subject to the order of the defendant. The defendant denied all liability upon these items. The burden was upon the plaintiffs to prove that they had these goods on hand at the time the defendant discontinued their use, that they tendered a delivery, or it was waived by the defendant, and that they, the plaintiffs, were damaged, and to what amount, by the refusal of the defendant to perform the contract. The learned judge of the court below inadvertently fell into the error of assuming that the only question involved in the case was whether the goods had been of the quality contracted for, and in instructing the jury gave a measure of damages for the refusal of the defendant to receive the goods, included in the last two items of the plaintiffs claim, which under the evidence in this case was not correct. Whether the plaintiffs had those goods on hand was a question of fact which if established at all was by parol evidence, and was for the jury. The contract had not been fully executed, a large amount of the goods still remained in the possession of the plaintiffs, and never had been in the possession, actual or constructive, of the defendant. There was evidence that the defendant had refused to accept the goods, and under that evidence a jury might have been permitted to find that an actual tender had been waived, but that was a fact for the jury. The general rule is that the measure of damages for a refusal to receive the goods, which a defendant has contracted for, is the difference between the price agreed upon and the market value at the time appointed for delivery : Jones v. Jennings Bros. & Co. 168 Pa. 493 ; Unexcelled Fire-Works Co. v.

Polites, 130 Pa. 536 ; Puritan Coke Company v. Clark, 204 Pa. 556 ; Gallagher v. Whitney, 147 Pa. 184 ; Baltimore Brick Co. v. Coyle, 18 Pa. Superior Ct. 186. If the goods were made specially for the defendant, and had no value whatever in the general market the plaintiffs can prove those facts. Those are facts which the plaintiffs must prove. When there is a conflict of testimony as to the controlling facts which must determine whether goods are made for a particular person and to answer only a specific contract, or are merely general merchandise in the market, the disputed facts, if they are to have any bearing upon the measure of damages, must be submitted to the jury for their determination. The third, seventh, eighth and tenth specifications of error are sustained.

The burden was upon the defendant as to the third item in controversy in this case, the claim of the defendant of credit, to the amount of $493.95, for goods which it had returned after having held them for several months. The defendant having received these goods it was its duty to inspect them, and if it had a full opportunity to inspect, and its agent knew or ought to have known that the goods were not such as had been contracted for, the right to reject them ought to have been exercised with reasonable promptness and unequivocally : Tete Bros. v. Eshler, 11 Pa. Superior Ct. 224 ; Morse, Williams & Co. v. Arnfield, 15 Pa. Superior Ct. 140. It was incumbent upon the defendant to satisfactorily explain to the jury why the defect in the goods had not been sooner discovered and the goods promptly returned.

The judgment is reversed and a venire facias de novo awarded.