# Gobey, Appellant, *v.* Wallace.

*Contract—Sale—Right to inspect—Passing of title—Refusal to accept.*

1. In an action to recover the price of a car load of lumber which the defendants had refused to accept because it was not the kind of lumber which they had contracted to buy, a verdict and judgment for defendants will be sustained where the evidence is conflicting as to whether the lumber delivered conformed to the order, and where the evidence also showed that the defendants unloaded the car in their yard, and after measuring and inspecting it, had promptly refused to accept it, notified plaintiff of the refusal, subsequently offered to take it at a reduced price, or return it, which offer was not accepted, and that thereafter the lumber was burned with all the other lumber on defendants' premises.

2. In such a case the defendants were entitled to a full opportunity to inspect the lumber before they were called upon to determine whether they would accept or refuse it; the title to the lumber would not pass until such opportunity to inspect the goods and pass upon them had been presented. Plaintiff was not entitled to show the market price of lumber of the kind in question at the time of the transaction.

Argued May 9, 1911. Appeal, No. 155, April T., 1911, by plaintiff, from judgment of C. P. Lawrence Co., Sept. T., 1908, No. 87, on verdict for defendants in case of John R. Gobey v. Frank W. Wallace et al. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Assumpsit to recover the price of a car load of lumber. Before PORTER, P. J.

The facts are stated in the opinion of the Superior Court.

At the trial the court refused under objection and exception to permit a witness for the plaintiff to testify as to the market price of No. 1 common poplar at the time of the transaction. [1]

The court also refused to allow the plaintiff to show the price of No. 2 common poplar. [2]

The court charged in part as follows:

[It also appears here in evidence that after the receipt of this lumber by Wallace Bros., Mr. Wagner, representing the plaintiff, called at the place of business of Wallace Bros., and that a conversation occurred there between them as to the quality and kind of lumber that had been received. That after this conversation the matter was referred to by Mr. Wagner in a letter to John R. Gobey & Company and also in a letter sent about January 31, speaking of the character and quality of this lumber. Now, it is contended here by the plaintiff, and this would be true, that it was the duty of Wallace Bros. to immediately notify the plaintiff of the inferior character of the lumber and that they refused to accept it as a compliance with the order given by Wallace Bros. to the plaintiff's agent, Mr. Wagner. That is true as a proposition of law. But in answer to that proposition the defendant company says that while they did not notify plaintiff of the inferior quality of the lumber, that within a few days after the receipt of the lumber Mr. Wagner, representing plaintiff company, called at their place of business and that they stated to him that they would not accept this as a compliance with the contract. That is a question for you to take into consideration. There is a dispute between Mr. Wagner and Mr. Wallace as to just what occurred at that conversation. The question for you to determine is whether or not there was a refusal by Wallace Bros. at that time to accept this lumber as a compliance with the contract which had been entered into between Wal-

lace Bros. on the one side and Gobey & Company on the other.] [7]

[We say to you further, gentlemen of the jury, that if the lumber contained in this particular car was not No. 1. common poplar lumber then the defendants are not liable in this suit. The plaintiff company is not entitled to recover if the lumber shipped is not the lumber that was ordered by the defendant, unless you should find that the lumber, while not in compliance with the specifications as contained in the order, was taken by Wallace Bros. with the intention of undertaking to accept the lumber at a lower price. If they took the lumber and accepted it, or with the intention in their mind that they would take the lumber and would pay such a price as they could afterwards agree on, being dissatisfied with the character and quality of the lumber, then they would probably be responsible for the value of the lumber. But the principal question involved in this suit is the question of whether or not Wallace Bros. accepted this lumber at the time that it was received by them.] [8]

[If you find that they did not accept this lumber but that it was there subject to the order of Gobey & Company and that Gobey & Company had been promptly informed by the defendant of defendant's refusal to accept this car of lumber under their contract, then the defendant would not be liable in this proceeding. But if this lumber that was shipped did comply with the terms of the contract and was accepted by Wallace Bros. then they are liable for the amount claimed in this suit.] [9]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were (1, 2) rulings on evidence, quoting the bill of exceptions; (7–9) above instructions, quoting them.

*A. W. Gardner,* with him *Chas. E. Mehard* and *W. W. Stevenson,* for appellant.

*Robert K. Aiken,* with him *J. Clyde Gilfillan,* for appellees.

OPINION BY PORTER, J., October 9, 1911:

The plaintiff brought this action to recover the price of a carload of lumber sold and alleged to have been delivered by him to the defendants. The trial in the court below resulted in a verdict and judgment in favor of the defendants and the plaintiff appeals. The lumber had been shipped in a box car and upon arrival at the lumber yard of the defendant company it was taken from the car and piled in a shed, where it remained for some time, when a fire consumed it and all the other lumber on the premises. The defendants contended at the trial in the court below that this car of lumber had not been of the kind which they contracted to buy, that after inspection they had declined to accept it and notified the plaintiff of such refusal; that the title to the lumber had not passed, and that the property when destroyed was that of the plaintiff.

The case as tried in the court below turned upon two questions: (1) Was the carload of lumber of the kind which the defendants had contracted to buy? and (2) did the defendants promptly refuse to accept the lumber and notify the plaintiff of such refusal? The contract for the purchase of the lumber was oral, for although the agent of the plaintiff made a memorandum of it in writing at the time that writing was not signed by either of the parties. There is no dispute under the evidence that the lumber which the defendant contracted to buy and the plaintiff to deliver was to be "a car of No. 1 common poplar lumber." There was no controversy under the evidence that the term by which the lumber was described has a distinct significance in the trade. It was conceded that in this kind of lumber the widths must be five inches or over and the lengths must run from ten to sixteen feet. There was a conflict of evidence as to whether this carload of lumber complied with this classification, but

as the defendants produced testimony amply sufficient to sustain a finding that the lumber was not what they had contracted to buy, the question of fact thus presented was submitted to the jury by the learned judge of the court below in a manner of which this plaintiff has no just cause for complaint, and the finding of the jury must be accepted as settling that question.

The appellant contends, however, that even if the lumber was not of the kind which he had contracted to deliver, that the defendants must be held to have accepted it, for the reason that they did not definitely refuse to accept and made no offer to return the lumber. We have carefully considered the evidence and are of opinion that this question also was for the jury. The lumber was shipped in a box car and arrived at the lumber yard of the defendant company on January 1, 1907. The defendants were entitled to a full opportunity to inspect the lumber before they were called upon to determine whether they would accept or refuse it; the title to the lumber would not pass until after such opportunity to inspect the goods and pass upon them had been presented: Tete Bros v. Eshler, 11 Pa. Superior Ct. 224; Baltimore Brick Co. v. Coyle, 18 Pa. Superior Ct. 186; Fogel v. Brubaker, 122 Pa. 7; Benjamin on Sales, secs. 1042–1051. The evidence was sufficient to sustain a finding that it was necessary, in order to properly inspect the lumber, that it should be taken from the box car in which it arrived. The mere fact that the lumber was taken from the car and piled in a shed did not necessarily constitute an acceptance of the goods as a compliance with the contract. The defendants notified Wagner, the agent of the plaintiff, on January 4, that they were not satisfied with the grade, lengths and widths of the lumber and that it was not what they had contracted for, and that agent admitted that the pieces were narrower and shorter than the average. Wagner, the agent of the plaintiff, was called as a witness by the latter and upon cross-examination admitted that the defendants told him at that time that they would not take

the lumber and that he thereupon told them that he would write to the company, the plaintiff, about it, and that it was then agreed between him and the defendants that the latter should hold the lumber and he, the agent of the plaintiff, would write to his principal with reference to what disposition should be made of it. He was asked this question: "Q. And the understanding was that the Wallaces were to hold the lumber subject to some disposal by your company? A. Yes." The defendants on the next day, January 5, wrote directly to the plaintiff stating their objection to the lumber, referring to the visit of Wagner on the previous day and saying that plaintiff could find out from him what the lumber was like, and closing with the specific statement that they would not pay the price for the lumber. The plaintiff replied to this letter by a letter dated January 6, 1907, in which he said: "We shall be glad to talk with Mr. Wagner regarding nature of your complaint when he comes on the 12th inst. and will also report the matter to the mill and will advise you in respect to any further information regarding this shipment." In view of this direct recognition of Wagner as his agent, we are of opinion that the plaintiff should be held to be estopped from asserting that Wagner had no authority to represent him in this matter. The plaintiff at later dates wrote letters to the defendants intimating a desire to be advised "what rebate would be necessary in order to make the car satisfactory." The defendants finally wrote the plaintiff, on February 7, 1907, saying, "this poplar is very unsatisfactory to us and to settle the matter up we would settle at a reduction of $3.00 per thousand, or if that is not satisfactory we will load same on car as we would just as soon do so as this stock does not suit us at all." The plaintiff never seems to have indicated whether he was willing to sell the lumber at the price which the defendants offered for it, and he failed to furnish them any direction as to reloading the lumber and shipping it elsewhere. Having failed to accept the offer of the defendants to buy the lumber at a

certain price, and retained the right to dispose of it to another purchaser upon terms more advantageous, the plaintiff is not now entitled to recover for the lumber at the reduced price. The offer of the defendants never having been accepted no contract grew out of it. The testimony of Wagner, the agent of plaintiff, and the letters of the plaintiff himself were sufficient to warrant a finding. that the lumber remained in the yard of the defendants absolutely subject to the disposal of the plaintiff down until the time it was destroyed by fire.

The parties had by their agreement fixed the price which was to be paid for No. 1 common poplar, under the contract, and if the plaintiff was entitled to recover he was entitled to recover the price agreed upon. There was no error in the exclusion of the testimony offered by plaintiff as to the market price of lumber of that kind, at the time of the transaction. There was no testimony which would have warranted a finding that the plaintiff had agreed to sell or the defendants had agreed to purchase "No. 2 common poplar," and evidence as to the market. price of that kind of lumber was properly excluded. The contract for the purchase of this lumber was oral and referred to lumber designated as No. 1 common poplar. It was entirely proper to admit testimony as to all that was said by the parties at the time of the contract, and to show that they had before them samples of the very grade of lumber to which the contract referred and that each of the parties clearly understood exactly what they were talking about. All the specifications of error are dismissed.

The judgment is affirmed.