## Mayer et al. v. The Donovan Company.

*Sale—Warranty—Notice of defect—Affidavit of defence setting up breach of warranty—When not sufficiently specific.*

1. An affidavit of defence setting up a breach of warranty of quality should be clear and unambiguous, and designate not only the time when the discovery of the defect in quality was made, but when and how notice of the fact was given to the seller. The buyer is bound to test or try the goods within a reasonable time and then notify the buyer promptly of defects.

2. In an action for the price of goods sold, an affidavit of defence setting up a breach of express warranty is insufficient which fails to set forth when the defect was discovered and the plaintiff notified, and the character of the defect, or that the goods were ever returned or paid for. The matter of time and notice must be fairly presented to the court.

3. In such case, the facts being undisputed, the question whether there has been an unreasonable delay is one of law for the court.

4. The allegation of an express warranty which does not negative the existence of an implied one, if not inconsistent therewith, can be considered.

Rule for judgment for want of a sufficient affidavit of defence. C. P. Lancaster Co., March T., 1923, No. 50.

*L. R. Geisenberger*, for rule; *John A. Coyle*, contra.

LANDIS, P. J., July 7, 1923.—The plaintiff brought suit upon a book account for merchandise, consisting of six spin-wheel signs at $80 a piece. The statement alleges that the contract was a verbal one, that the goods were delivered on Sept. 27, 1922, and, though demands had been made, the claim has never been paid.

The defendant has filed an affidavit of defence and an amended affidavit of defence. Therein it admits that it purchased from the plaintiff certain merchandise, consisting of signs, but it denies that the signs were received and used by it. It avers that the plaintiff expressly agreed to warrant the goods that they should be fit for the purpose for which they were sold, which was to advertise the defendant company and its goods; that they were æroplane signs, revolving in the wind; that they were purchased by description from the plaintiff, a dealer in such goods, with the warranty that they should be of merchantable quality, fitted for the purpose for which they were to be used, and of the quality required by the usages of trade; that is, to withstand wind and weather; that, notwithstanding the warranties aforesaid and representations of the agent of the plaintiff, the said signs, when received, were defective in construction and loosely and improperly fastened, with loose and worthless propellors, and not according to representations made by plaintiff's agent, nor adaptable in any manner to the purposes for which they were sold. It admits that it erected the signs, and alleges it then discovered that they were defectively constructed and improper for the use for which they were sold, and also alleges that it notified the plaintiff by telephone, but received no response; that notice was subsequently given to the plaintiff that the signs were valueless and not in accordance with the warranties. It does not claim in these affidavits that it ever returned, or offered to return, the signs or that it paid for them. It claims, however, to have been damaged in a sum in excess of the value of the goods purchased.

The affidavit of defence, as originally filed, was signed and sworn to by John Murphy, office manager of the Donovan Company. Objection, on argument, was made that the affidavit was not signed by an officer of the company, nor by any one having special knowledge of the facts, as provided for in section 12 of the Practice Act of May 14, 1915, P. L. 483. The objection, if properly raised, would undoubtedly be held good. But no motion was made to

strike it off on that account, and as the defendant afterwards filed the "amended affidavit of defence," signed by the vice-president of the company, it is unnecessary, therefore, to dwell upon this objection. We, however, will confine ourselves generally to the allegations set forth in the amended affidavit.

It may be conceded that, as the signs were bought for a particular purpose, an implied warranty would, in any event, have arisen that the goods were of merchantable quality, and as their purpose was known to the plaintiff, a like warranty would arise that they were reasonably fit for the purposes intended. In this case, however, the defendant relies on express warranties made at the time of the sale, so the question of implied warranty, under the Sales Act of May 19, 1915, P. L. 543, does not seem to be important, although it must be conceded that the allegation of an express warranty, which does not negative the existence of an implied one, if not inconsistent therewith, can be considered: Wright v. General Carbonic Co., 271 Pa. 332.

Assuming, then, that there was an express warranty as alleged, the only point seemingly open to controversy is: Does the course of conduct pursued by the defendant in receiving the goods and in not returning them when it ascertained the alleged defects, or in giving proper notice of defects claimed, prevent it from asserting its present defence?

An affidavit of defence setting up a breach of warranty of quality should be clear and unambiguous, and designate not only the time when the discovery of the defect in quality was made, but when and how notice of the fact was given to the seller. In Wright v. General Carbonic Co., 271 Pa. 332, Mr. Justice Sadler, delivering the opinion of the court, said: "It is to be noted that the expression of dissatisfaction is not limited to the time of the discovery of the breach. If that were so, the affidavit of defence in the present case must be held to be satisfactory, for it avers that notice was given 'immediately,' though it is silent as to the date when this was done. But the seller must be advised of the defect after the buyer 'ought to have known.' 'An inspection, trial or test to determine whether the goods are of the quality specified must be made within a reasonable time, and the buyer is guilty of laches, precluding rescission, if he delays making such inspection for an unreasonable time:' 35 Cyc., 153; Pierce v. Steel Co., 184 Pa. 55. . . . It is further to be noted that, though defendant alleges notice of the breach was given immediately upon discovering the defect—time not stated—the character of its communication is not disclosed. As in the case of rescission of contracts of sale (Wright v. Bristol Patent Leather Co., 257 Pa. 552), the notice should be clear and unambiguous, and designate not only the time when the discovery of the defect in quality was made, but when and how notice of this fact was given to the seller."

In Werbitsky v. Fisher, 64 Pa. Superior Ct. 284, it was held that "in an action brought in May, 1915, for the price of a quality of velvet sold and delivered in December, 1913, an answer is insufficient to prevent judgment which avers that the goods were sold by sample, and were not according to the sample, without any averment as to the quality of the sample, and that as soon as defendants discovered the inferior quality of the goods 'and that the same were not according to the contract, they notified plaintiff and requested him to take them away,' without any averment as to when, where or to whom the offer to return the goods was made." See, also, Spiegelberg v. Karr, 24 Pa. Superior Ct. 339.

In this case the amended affidavit of defence stated that "shortly after the goods were received by the defendant company, it discovered the signs were defectively constructed and improper for the use for which they were sold,

4 D. & C.

which fact the defendant notified the plaintiff of by telephone." It will be observed that the time when this notice was given is not mentioned. It adds that "later (no time given), on erecting the signs, it was further learned that they were so defectively constructed that they were worthless, and notice was given to the plaintiff accordingly, stating that the signs were valueless and not according to warranties of plaintiff." The character of the defect, as well as the time, is not stated, nor is the defect, so far as the affidavit is concerned, made known. In the original affidavit of defence it was alleged that, "as soon as the signs were received, the defendant notified the plaintiff that these signs were not properly constructed, were not adaptable for the defendant's purpose. . . ."

It will be observed that the same loose averments appear in both of the affidavits, and also that the same defects exist in both of them. The buyer is bound to give notice to the seller within a reasonable time after he knows, or should know, of the existence of defects in the goods: Crunden-Martin Manuf. Co. v. Turner, 274 Pa. 425. Mr. Justice Frazer in this case says: "The law in this State requires the buyer to exercise due diligence in inspecting goods purchased and in advising the seller of imperfections, and where the facts are undisputed, the question as to whether there has been an unreasonable delay is one of law for the court." So the court could properly judge of this question, the defendant ought to have fairly presented the matter of time and notice to the court, and this I do not think it has done in the present case. I am of the opinion that the affidavits of defence are insufficient, and that the rule should be made absolute and judgment entered against the defendant.

The rule is, therefore, made absolute, and judgment is entered in favor of the plaintiff and against the defendant for the sum of $480, with interest from Oct. 27, 1922, making $500.

Rule made absolute and judgment for plaintiff for $500.

From George Ross Eshleman, Lancaster, Pa.